May it please the Court and Counsel, my name is Ruben Iniguez. I'm Counsel for Appellant and Petitioner in this case, Arturo Oviedo. In this habeas corpus case, Mr. Oviedo raises four claims. Three of those claims relate to ineffective assistance of his trial counsel. One claim is a due process trial court error claim relating to the denial of a mistrial motion by the trial court. Unless this court has questions concerning the due process claim, I am going to address the ineffective assistance of counsel claims. Turning to those claims, Your Honors, I will principally focus on the first two claims that it is agreed by the parties, there's no dispute, that those claims are preserved. That is, that they have been fully exhausted and that there was no default. And the merits of those claims have been addressed by all courts below. The first issue is an issue with regard to the failure to file written objections to the PSI. With respect to the two first claims, Your Honor, of ineffective assistance, the failure to object to the prosecutorial comment. No, but I guess my question was, there was an issue in my mind as to whether he might be procedurally barred from raising that claim. Yes, I had indicated that I was going to focus principally on the first two and that those two are fully preserved. Yes, with respect to the third claim, the failure to file the timely written objections, there is an issue that the government is raising that that was, in fact, defaulted. Go ahead. If you want to start with your strongest arguments first, go ahead. I didn't mean to jump to the weaker one. Thank you, Your Honor. Your Honor, the first issue, both of the first two claims of ineffectiveness relate to the during the closing argument at the trial. The first issue is one under Griffin v. California, a Supreme Court case from 1965, and that deals with the switching of the burden of proof. I think, really, one of the most important facts in this case that I think truly distinguishes the single case that the government relies upon is the fact that Mr. Oviedo in this case did not testify at his trial. He exercised his right to remain silent and put the government to its burden of proof. He did put on evidence, though, didn't he, in the defense case? He did put on three witnesses, Your Honor. And wasn't one of the comments related to the eyewitness identification expert? Yes. And who paid him? How he was paid? Exactly. Who essentially the issue was, the issue became one, because the issue sort of escalated, Your Honor, from one of asking him how much he was paid and who he worked for to then the comment from in closing initially by the prosecution that he was, Dr. Lopez, was paid a pretty healthy sum to say people don't see what they see. Mr. Inouye, how does that comment on the defendant's failure to testify, isn't that, isn't it appropriate for a skeptical prosecutor to attack the credibility of the defense expert witness on eyewitness identification, one of the grounds being that he's essentially, you know, a paid expert who will render any opinion that anybody pays him to render? I mean, that's pretty common. What we're doing, Your Honor, I guess we're discussing separate claims, actually. The claim with respect to Dr. Lopez and who paid him, the comment by the prosecutor about the taxpayers paying for that, is really the second claim of ineffectiveness. But your argument, as I understand it, is that that somehow inerts to the detriment of the defendant by amounting to some sort of an improper reference to the failure of the defendant to testify. No, Your Honor. Did I miss your argument? Yes. All right. The taxpayer comment is in violation of Berger v. United States, a different claim. And our argument there is that the prosecutor was appealing to the passions of the jury as taxpayers to get a verdict of guilty. The first claim is the switching of the burden of proof claim relates to the failure of the prosecution to call one of the witnesses, Manuel Hernandez, who the prosecutor initially first raised the issue. I think that's a factual dispute here. It was the prosecution who first told the court and counsel that he would be calling and describing his witnesses Manuel Hernandez. Later on, defense counsel in closing commented to the jury that, well, you might want to ask yourself, where is this witness that was promised to be called? And they didn't call. What might he have said? What might he have heard? And then, of course, the prosecutor came up and said, well, I'm not the only one that can issue subpoenas here. Defense counsel, if someone is important to the defendant, and he wasn't referring to defense counsel, which is the difference between the Morris case and this case. He's personally referred to Mr. Oviedo as the defendant. And he personally, if he believes someone is important, can subpoena the witness because he has the subpoena power as well. That is the switching of the burden of proof argument. And that is that that is a common case. The burden of proof when the defense has actually put on three witnesses so the jury knows that they have the right to call witnesses. And the prosecutor simply points out that, you know, if the defendant thought this guy would be helpful to his defense, he has subpoena power just like we do. I don't see the due process violation there. There is a difference, Your Honor, I think, between actually calling the witnesses, having the right, and the prosecutor indicating that if someone is important, you should be calling them. The comment was really that the person wasn't called. I didn't call him, and I had promised to call him. He effectively sandbagged the defense, indicating he was going to call this witness. But that's not the issue, is it? The issue is whether or not it was improper for the prosecutor to point out that if this guy was so important, the defense had equal authority to subpoena him. And what's wrong with that? Because the defendant has no obligation, no obligation to sustain any kind of burden. It's the government that has the burden to prove, to prove all the elements beyond a reasonable doubt, to call its witnesses to prove its case. The defense has no obligation, even though he did exercise his right to call three other witnesses, he has no obligation to call any witness or any specific witness. But I guess the concern I have is that once he's done that, then doesn't that mitigate the harm that you are claiming? If the defendant had simply sat there, as he is entitled to do, and just cross-examined the prosecution's witnesses during his case in chief, it seems to me you'd have a stronger argument. But where the defendant actually put on an affirmative defense case, it just doesn't ring as true with me. Did the defendant ask for any curative instruction by the trial judge to say, you know, he had no obligation to subpoena anybody? No curative instruction was requested, Your Honor. Counsel failed to object, and counsel we're dealing with an ineffectiveness claim here, failed to object and failed to request any sort of curative instruction. And I would note, and I'll return to your question, Judge Tolman, in a second, the court later did instruct the jury. And I think that instruction further supports the prejudice here. And what the instruction was is that witnesses presented by each, that the witnesses, you refer to the witnesses presented by each party in the case. So you're right, you're right, Judge Tolman, that there were witnesses presented by each, but I think that instruction even suggests that both sides, both parties are intended and expected to produce witnesses. I think what, I would agree with the point that it would be stronger here had the defendant not put on any evidence whatsoever, and then this comment was made. But that really can't be the standard. Was the jury given, I assume they were, the standard burden of proof instruction for each element of the offense? Yes, they were. Yeah. Again, that would be later by itself without any sort of reference to what occurred here. Was this case tried in Burns, or? Malheur County, Your Honor. Or Burns? I'm not sure, I'm not sure which suit. Who was the trial judge? Judge, I'm not sure the pronunciation, but I think it's Y. Reagan. Y-R-A-G-U-E-N. And was that also the judge for the post-conviction? And, Your Honor, you know, I'm recalling Judge Y. Reagan, and I believe he may have actually been the post-conviction trial court judge. I'm not sure off the top of my head who the actual trial court judge would have been. I was just wondering how these issues of ineffective assistance were raised in the State Court in the exhaustion. Technically, he has exhausted his remedies because he's gone through the state post-conviction proceeding and an appeal, but the record doesn't show very much about what these affirmed without opinion dispositions out of the Oregon court. They don't tell us very much about what happened or what the court thought about it, if they thought about it at all. The only thing we do know, Your Honor, in raising these claims of ineffectiveness is that he did raise them in the proper forum, which was the post-conviction trial court, and I believe it was Judge Y. Reagan there. And all the court found with respect to this claim that we're discussing here, the switching of the burden proof. I'm looking at Excerpt of Record 21, and it's signed by Circuit Judge J. Burdette Pratt, and that's the judgment on post-conviction relief. At trial level? Yeah, Circuit Court for Mulholland County. So I believe I'm right, Your Honor, that it's Judge Y. Reagan who's the post-conviction court judge. He was the trial judge. No, no, no, no. You misunderstood. This is the judgment on petition for post-conviction relief signed by Judge Pratt. Judge Pratt. So it was a different judge on post-conviction relief. Okay. So it's Judge Y. Reagan who's the trial judge, then. Well, I – not to pursue the matter too much, but the – I think the district judge or the Judge Ashman – Ashman, that's the – who tried this habeas, thought this may be a harmless – I mean, if there was an error in this comment about the failure to call Mr. Hernandez, was a harmless error, if it was an error. There was no prejudice, because there's no showing what Hernandez – what good he would have done if he'd have been called. It's true that there is no indication of what Mr. Hernandez would have testified to because he was never called. Judge Ashmanskas, in a footnote in his opinion, did say that he found this issue to be troubling. It was troubling, yeah. Yes. And what he said then is that the problem was – and that if we were considering this on direct appeal, that it would have been troubling and perhaps a different result would have been forthcoming. However, he was looking at the deference that was due to the state post-conviction court's finding, and because of that deference, rejected the claim. But I would note – and this goes back to your earlier question, Judge Goodwin, is that the only thing we know about what the post-conviction court found was that it found that it was not improper under the circumstances. It didn't really explain that much more, but he also did say that the defense attorney first raised the issue and that there was no ineffectiveness of counsel because there were no trial court errors. I would take issue with both of those findings. Factually, it was not defense counsel who first raised the issue. Again, I think the record is very clear on this, and it's the ER, the excerpt of record at – it's 115, where the prosecutor indicates that he would be calling Mr. Hernandez to testify as a witness on behalf of the prosecution. So it was not, in fact, the defense counsel who raised the issue. He later commented on that failure. Was this the same Hernandez that was shown a photo display after the attack? This would be the husband of the woman who was the only identification witness who did testify and was shown, of course, two – She was the only one that was shown the photo display and wasn't able to pick anybody out. That's right. She was shown one photo display. She was unable to describe or identify Mr. Oviedo as the perpetrator. Another montage was prepared. The second one, of course, also having Mr. Oviedo's photograph, the only photograph common to both montages, and on that occasion she did pick him out. She later indicated that it was because that photograph was more recent and looked more like he did on that day. But, of course, I think another fact, in addition to the fact that Mr. Oviedo did not testify at his own trial here, is the government's claim here that this case is strong and compelling. I would respectfully disagree with that characterization of the evidence. There was no direct physical evidence that tied Mr. Oviedo to this offense. The victim himself, although he indicated that he thought the person's name was Hart, that was about it. He was not able to identify Mr. Oviedo. And, again, with the one identification witness that we had, I think that is troubling, the identification there, the two montages that were presented, the lighting, the circumstances under which she was served. There wasn't much doubt that Oviedo tried to sell some food stamps down the street at 3 a.m. That was the testimony. That was sort of an interesting circumstance. That piece of circumstantial evidence? Since food stamps were part of the loot taken in the robbery. Yes. So the food stamps were stolen at 2 a.m., and he tries to sell them at 3 a.m. Correct. Yes. That is the circumstantial evidence. It puts it in the vicinity. And, of course, there we're dealing with the jury's verdict, really, more than anything else, and maybe questions of innocence and guilt. Really, what we're talking about here is how the claims were made. Well, now, what do you claim is your best, strongest strickland violation under our rigid test We're all familiar with that standard, Your Honor, and I think it's the claim that we're all focused on here first, which is really the switching of the burden of proof. There is the Berger issue with respect to the comment about the taxpayer money. I would note for the Court that one of the cases that I did cite at page 29 of my opening brief, Tucker v. Zant was later remanded by the Supreme Court, and an en banc panel did reach a contrary decision than the three-panel 11th Circuit Court had reached with respect to that. That was a capital sentencing phase case where the prosecutor made comments about the thousands and thousands of dollars that would be spent if he was imprisoned for life, so I did want to note that for the Court. I think that's also a strong claim of ineffectiveness. I think it's clearly, under both of these, there is clearly an error here that was made, and the attorney failed whatsoever to object to these clear errors on the part of the prosecution. There is no sua sponte correcting statement by the judge to disregard the taxpayer's money. There should have been some sort of instruction, Your Honor, and there should have been not only an objection but a motion for mistrial, and of course then we get into the effect of that due process claim, which is the probation officer's testimony about the new arrest in Texas for other crimes, and then when you get these sorts of comments in closing argument, then again that motion for mistrial should have been renewed, and I believe under the circumstances, the totality of the circumstances, it should have been renewed. Are you claiming that the state courts clearly violated Supreme Court law in affirming this conviction? Because these matters about the mistrial and so on did go up on appeal to the state court. Yes. It did go up on direct appeal to that issue. State courts said that there was no harm, no foul. It did, Your Honor. Yes. Yes. The case, of course, that he's claiming that this is an unreasonable application of, and contrary to, of course, is Strickland, and I'm referring to Griffin and Berger with respect to these claims because that shows that counsel's performance here was deficient, the first prompt. That these were clear errors under Griffin and Berger. Counsel was deficient by not objecting, and the prejudice, of course, is that had the mistrial motion been granted, that it most likely would have been granted had it been made. Okay. Thank you. Thanks very much. And if you have anything to say in rebuttal, you do have some time. Thank you. Ms. Hanlon. May it please the Court, Counsel, I, too, plan to focus on the ineffective assistance of counsel claims, unless Your Honors have any questions about the fourth claim that is a due process argument. With respect to the first claim, trial counsel should have objected to the prosecutor noting during closing argument that Manuel Hernandez, that the defense also could have called Manuel Hernandez to testify as a witness. The basic reason that there's no ineffective assistance of counsel claim for failure to object is that the prosecutor's argument was not objectionable under the circumstances. First, I'd like to ---- I'm not sure I want to go quite so far as that. If the defense counsel had asked at that time for an instruction from the court to the jury, I remind, ladies and gentlemen of the jury, that the defendant has no obligation to produce any witnesses. Should the trial judge have rejected the request for that instruction? I think it would be well within the trial judge's discretion to go either way. It certainly could have been appropriate for the trial judge to repeat that instruction, which I'd like to point out he did give to the jury in the preliminary instructions. In the reply brief, counsel asserts that at no point during the trial did the court ever instruct the jury that it was not petitioner's burden or obligation to present evidence or witnesses in his defense. And that's actually not correct. On page 51 of the transcript, the trial court did instruct the jury that the State has the burden of proof, not defendant. And then the court went on to say, thus, the defense has no obligation to offer any evidence. So the jury did hear that once. The trial court certainly could have said that again. But that doesn't mean that what the prosecutor said was inappropriate. And, of course, after the prosecutor made his rebuttal statement, during the final instructions to the jury, the court repeatedly instructed the jury that the State bore the burden of proof. So I think that's sufficient to counteract any misimpression that anyone could have drawn from the prosecutor's argument before that. I guess my answer is not so much where this goes down the line, but just to say I think there are some fairly strong arguments to that, even if the prosecutor's comment was improper, and even if it was ineffective assistance not to object, that it was harmless error and so on. But I'm after the first one because I'm a little hesitant to say that a prosecutor in that circumstance is acting absolutely inappropriately, to say, well, you know, that guy over there who has no burden of evidence, no obligation to bring any evidence, I'll say that. I'll just say he didn't call that witness. I'm not sure the prosecutor really is supposed to say that. But it's a different question from whether or not it's reversible. Absolutely. And whether Petitioner has proved he was prejudiced as a result of the absence of an objection. But just addressing whether what the prosecutor did was appropriate. I understand, Your Honor. I'd like to make a couple of ñ Because you started out by saying you thought that that was appropriate for the prosecutor to say that. Do you really want him to say that? I think it was acceptable for the prosecutor to say that. I don't think it was ñ Acceptable in the sense of not reversible or acceptable because that's a good prosecutorial practice? It was acceptable for a couple of reasons. First, I'd like to point out that when counsel referred, Your Honors, to the excerpt of record where he says that the prosecutor first raised the issue saying he was going to call Mr. Hernandez as a witness. That's the justification if there is one for the prosecutor saying that. Well, that statement, just so it's in context, was not made in front of the jury. What happened apparently ñ this was during pretrial proceedings just in front of the judge. The prosecutor had provided the defense counsel with a witness list, as happens. And apparently through a clerical error, only the front of a two-sided document got copied. So the page of the excerpt, what happened during the pretrial hearing was the prosecutor said to the court and defense counsel, and by the way, there are these other people on my witness list, and Manuel Hernandez is one of them. So that's the context in which the prosecutor said, I'm going to be calling Manuel Hernandez, which is not ñ I'm not sure those were actually the words he used, but it was just in identifying who was on the witness list. Second, this court has stated two things about when a prosecutor may comment on a defendant's ability to call a witness, and both are applicable in this case. First, the court has, in alternative holdings or suggestions at least in two cases, said that when a defendant opens the door by first commenting on the prosecution's failure to call a witness, it is acceptable for the prosecutor to follow up in that during a rebuttal argument by saying, yes, we didn't call the witness, but neither did the defense, and the defense could have. And that suggestion comes in United States v. Williams and United States v. Wharton, which are both cited in the briefs in the case. Now, both of those cases are also distinguishable, as counsel has pointed out. In Williams, the defendant had not testified at all, or rather, had testified, so there was no concern that the prosecutor's statement would be viewed as a comment on the defendant's failure to testify. But still, this court has said that it's okay for a prosecutor to respond when defense counsel opens the door on that issue. And second, this court repeatedly has stated that, and I'm quoting here from United States v. Lopez-Alvarez, a prosecutor may properly comment upon the defendant's failure to present exculpatory evidence as long as it is not phrased to call attention to defendant's own failure to testify. That is a statement that this court has made over and over in cases including those in which defendant did not testify, including Castillo, Lopez-Alvarez, and Mares. Now, in Mares, counsel also is correct. The prosecutor's comments were perhaps a bit more refined in that case and commented on defense counsel's failure to call the witness, not defendant's own failure to call the witness. But the court, in addition to noting that distinction, also held that the prosecutor's comments were permissible because they, quote, were intended to highlight what the prosecutor felt were weaknesses in Mares' case. They were not in any manner directed at the appellant's failure to take the stand. And that's the same as what happened here. The prosecutor was merely responding to defense counsel's argument and pointing out there's a weakness in the case. Defendant could have called this witness. He did not say it is defendant's burden to prove on you that somebody else committed the crime. And even if the jury had been disposed to misinterpret the comment that way, the repeated instructions later on that the state bears the burden of proof would have been sufficient to correct that. Skipping to the third ineffective assistance of counsel claim, which is the failure to the argument that defense counsel should have filed written objections to the pre-sentence investigation report instead of merely making an oral objection to the criminal history in that report. I just want to emphasize two things. First, that there is no evidence in the record of any sort that the PSI was inaccurate, except for petitioner's own testimony during the post-conviction trial. There is no indication out of Texas that there was only one crime, as petitioner would have it, rather than the two crimes that were counted for the purposes of his criminal history. And second, under Reese v. Baldwin, in any event, petitioner procedurally defaulted this claim by not raising it in his petition for review to the Oregon Supreme Court. Unlike in the Court of Appeals, where counsel filed a brief and petitioner filed a pro se supplemental brief, there was only one petition for review to the Oregon Supreme Court, and it was the one filed by counsel. And in that petition, counsel specifically referred only to two ineffective assistance of counsel claims, both of which related to the prosecutor's closing arguments, the one related to the fact that Mr. Hernandez was not called as a witness and the one commenting on who paid Dr. Loftus' expert witness fees. Nothing in the petition referred to whether counsel should have filed written objections to the pre-sentence investigation report. The only way that the Oregon Supreme Court could have known that petitioner hoped to continue litigating that issue as well would be to look back to the briefs that were filed in the Court of Appeals. Is it not sufficient that in the filing of the Oregon Supreme Court they were directed to do so? No, because of the particular bifurcated procedure, Your Honor, that is followed in the Oregon Supreme Court. What happens is that a person dissatisfied with a Court of Appeals ruling files a petition for review in the Oregon Supreme Court. Oregon Rule of Appellate Procedure 9.05 sub 4 sub a requires, explicitly requires the petition itself to include all claims of error that the petitioner wishes to raise. Now, at that time, a party who is petitioning must also tell the court whether, if it accepts review, if the Supreme Court accepts review, the party intends to rely on the brief that it filed in the Court of Appeals, or if, instead, it intends to file a new brief on the merits in the Supreme Court. And that is the rule to which petitioner refers in his reply brief, or Act 9.20. But it is only after the Oregon Supreme Court has decided to accept review that it may go back and look at the briefs that were filed in the Court of Appeals. That is not part of the process that it undertakes when deciding whether to grant review. And that is why a failure to include the claim in the petition itself amounts to a procedural default. So in your view, the next judge was wrong in relying on that as part of his rationale. That's correct. And I'd also like to point out that in the reply brief, petitioner asserts that respondent waived the procedural default argument by failing to object to the magistrate's finding and recommendations on that point. In fact, petitioner filed objections to the F&Rs. Respondent filed a response to those objections, and in that response reiterated his assertion that the claim was procedurally defaulted and that the F&Rs were incorrect on that point. And that may be found in a document titled Response to Objections Dated July 9, 2003 in the District Court Record. Unless your honors have further questions, I have nothing to add to the brief. Thank you very much. How many just moved, your honors? I think with respect to the ineffective assistance of counsel claim, we really do initially, I think, have a factual issue here, which is who opened the door. And again, I would ask the court to look at the excerpt of Record Page 115 that both counsel referred to, which is where the prosecutor does indicate. And I would agree that it was to the court in setting forth who the witnesses would be. But nonetheless, counsel did state that he would be calling Manuel Hernandez as a witness in the case. I think defense counsel... Would it be a fair characterization of the Oregon Post-Conviction Review to say that their determination that this was, in essence, a fair reply meets the EFTA standards? That this was a fair reply by... In other words, as I understood it, what they were essentially saying on Post-Conviction Review was, we don't think that this was error, but even if it was, it was harmless. And as I understand our standard of review under EFTA, we would have to find that that was an objectively unreasonable determination in the light of this factual issue, I guess you would call it, as to who opened the door. That is the standard, your honor. You have to find that it's objectively unreasonable. I would say that with respect to looking at the post-conviction court's findings, again, the finding was that defense counsel, the attorney, first raised the issue. And that's what I take disagreement with. I think that... Well, if you look at it from the standpoint of what did the jury hear, there is clearly the defense counsel raised the issue of the prosecution's failure to call Hernandez. And the question becomes whether or not the prosecutor's response to that was a fair reply. And so I'm not sure it's quite as clean an error as you would like us to characterize it as. If the jury never heard the prosecutor say before trial, the missing second part of my witness list includes Hernandez's name, I'm not sure that it makes any difference. And looking at the excerpt, your honor, it appears that all the references there are to the court, the counsel's addressing the court. I would have to agree that it looks like the jury was not in the courtroom at the time that the witness list issue was presented. However, I think if we look at the broader question about this sort of procedure, what we'd be doing is allowing prosecutors to indicate to the court and counsel who their witnesses would be, a witness who might be favorable. But when you file your witness list before trial, much like the prosecution, you include names of people that you don't necessarily ultimately call at trial. Because you don't want to get jammed by not being able to call a witness because it wasn't listed on your witness list. But if there is a witness who the prosecution has indicated it will call, and you believe that witness is also favorable to the defense, then there's no need for defense counsel to either put them on the list or to call them. But isn't it incumbent upon defense counsel to, as the trial proceeds, to say to the prosecutor who you're going to call tomorrow, and if the prosecutor says, I'm not going to call Hernandez, for the defense counsel to say, fine, then I want him? I guess the only point at which it's going to become apparent that they're not going to call him is when they rest. And I think at that point it's going to be far too late to do anything. Here the comment by the prosecutor was, if this guy's available, where is he? It seemed to me that if he's on his witness list, he knows very well where he is. And again, that just seems like sandbagging to me by the prosecution to set up the defense. I'm going to call this guy, then at the last moment I don't call him, and then indicate that if. I mean, I've had that circumstance happen to me a number of times, and the answer is, then I want him. Well, we're not going to resolve this to either your satisfaction or mine, so thank you. Thank you very much, Your Honor. Thank you very much for a very helpful argument on both sides. Yes, I'm very well done. The case of Oviedo v. Johnson is now submitted for decision. We'll take a five-minute break as the next case, United States v. Montgomery, is setting up. All rise. Court stays in recess for five minutes.
judges: Goodwin, W. Fletcher, Tallman